[Civ. No. 35143. First Dist., Div. Two. July 20, 1976.]

DIAMOND NATIONAL CORPORATION,
Plaintiff and Respondent, v.
STATE BOARD OF EQUALIZATION, Defendant and Appellant.

[Civ. No. 35698. First Dist., Div. Two. July 20, 1976.]

CROCKER-CITIZENS NATIONAL BANK, Plaintiff and Appellant, v.
STATE BOARD OF EQUALIZATION, Defendant and Respondent.

## COUNSEL

Evelle J. Younger, Attorney General, Ernest P. Goodman, Assistant Attorney General, and Philip M. Plant, Deputy Attorney General, for Defendant and Appellant and for Defendant and Respondent.

Franklin C. Latcham, James E. Merritt, Prentiss Willson, Jr., Morrison, Foerster, Holloway, Clinton & Clark and Morrison Foerster for Plaintiff and Appellant and for Plaintiff and Respondent.

## OPINION

**TAYLOR, P. J.**—Pursuant to remand and mandate for further consideration from the United States Supreme Court on its per curiam decision of April 19, 1976 (425 U.S. 268 [47 L.Ed.2d 780, 96 S.Ct. 1530]), the above entitled matter, first decided by this court on June 24, 1975 (49 Cal.App.3d 778 [123 Cal.Rptr. 160]), is again before us. Accordingly, our prior opinion is vacated for the reasons set forth below and the State Board of Equalization is directed to grant the refund application of the national bank, as it is exempt from state and local sales taxes pursuant to former 12 United States Code section 548.[1] (*Agricultural Bank* v. *Tax*

[1]National banks, such as Crocker, may be taxed by a state only as provided by Congress (*Security-First Nat. Bk.* v. *Franchise Tax. Bd.,* 55 Cal.2d 407, 413 [11 Cal.Rptr. 289, 359 P.2d 625]). At the time here pertinent, 12 United States Code section 548 provided that states may tax national banks only for: 1) national bank shares; 2)

*Comm'n.*, 392 U.S. 339, 346-348 [20 L.Ed.2d 1138, 1143-1144, 88 S.Ct. 2173].)

These combined appeals[2] arose from two actions for refunds of state and local[3] sales taxes paid to the State Board of Equalization in 1968 and consolidated for trial on stipulated facts. Both raised the question of whether, pursuant to Revenue and Taxation Code section 6052, the legal incidence of the California taxes falls on the purchasing national bank (Crocker), or on the retailer-vendor (Diamond), under the standards established by the United States Supreme Court in *Agricultural Bank, supra.*

As the facts were stipulated, we set forth briefly only the basic facts pertinent to the central legal issue before us. Diamond supplied printed forms and other items of tangible personal property to Crocker for use in its business as a chartered national bank. The parties understood and agreed that the item prices stated by Diamond were exclusive of "sales tax reimbursement," which would be added to the stated price in computing the total amount Crocker would pay for the merchandise. During the period in issue (Mar. 25, 1968-June 16, 1968), Crocker paid the sum of $292,086.49, of which $278,174.55 represented the stated price, and $13,911.84 represented "sales tax reimbursement."[4] Diamond included the $278,174.55 in tax returns filed with the board, paid the appropriate tax, and subsequently filed for refund of $13,908.73;[5] Crocker also filed for a refund of the same amount. The board

dividends derived from taxable income of an owner or holder thereof; 3) net income of such associations; and 4) according to or measured by their net income. Subsequently, the statute was amended (Pub.L. 91-156, 83 Stats. 434, enacted Dec. 24, 1969) and became effective at date of enactment, with a permanent amendment effective subsequently that removed the former exemption from state sales and use taxes.

[2]In No. 35143, Diamond's action for a refund, the court below entered judgment in favor of Diamond and the board appeals. In No. 35698, Crocker's action for a refund filed on the theory that it was the taxpayer, the only issue was Crocker's standing to sue. As Diamond stipulated that it would pay to Crocker the amount refunded pursuant to Revenue and Taxation Code section 6054.5, the court dismissed Crocker's action as moot and Crocker appeals.

[3]As the local sales tax law (Rev. & Tax. Code, § 7200 et seq.), with certain exceptions not pertinent here, in effect, incorporates by reference the state Sales and Use Tax Law (Rev. & Tax. Code, § 6001 et seq.), we shall simply refer to the California sales taxes.

[4]The term "sales tax reimbursement" is noted in the Revenue and Taxation Code to describe amounts such as those paid by Crocker to Diamond, which were separately stated on the invoices and therein referred to as "sales tax" or "5% sales tax" and on purchase orders referred to as "tax."

[5]The difference arose because the amount paid by Diamond to the board was based on its total gross receipts while the "sales tax reimbursement" was computed on the basis of

disallowed both refunds. Diamond agreed that any refund returned to it would be refunded to Crocker pursuant to Revenue and Taxation Code section 6054.5 and *Decorative Carpets, Inc.* v. *State Board of Equalization,* 58 Cal.2d 252 [23 Cal.Rptr. 589, 373 P.2d 637].

In reversing our decision, the United States Supreme Court reiterated the controlling nature of its 1968 decision in *Agricultural Bank* v. *Tax Comm'n., supra.* In *Agricultural Bank,* the United States Supreme Court reversed a decision of the Supreme Judicial Court of Massachusetts that held that the First Agricultural National Bank of Berkshire was subject to Massachusetts sales and use taxes on purchases for its own use of personal property. The court held, inter alia, that state taxation of national banks was within the exclusive province of Congress (*Agricultural Bank, supra,* at p. 346 [20 L.Ed.2d at p. 1143]). However, in *Agricultural Bank,* the United States Supreme Court refused (at p. 341 [20 L.Ed.2d at pp. 1140-1141]) to consider the constitutional question of "whether today national banks should be considered nontaxable as federal instrumentalities." Instead, *Agricultural Bank* dealt with the identical question presented here, namely, whether the incidence of the state tax falls upon a national bank that would then be exempt pursuant to former 12 United States Code section 548, or upon the vendor who sells tangible personal property to the bank (*Agricultural Bank, supra,* at p. 346).

In *Agricultural Bank,* although the Massachusetts court decided that the tax was imposed upon the vendors, the United States Supreme Court declared itself not bound by the state courts's characterization of the tax since the question presented affected federal immunity (*Agricultural Bank, supra,* at p. 347 [20 L.Ed.2d at pp. 1143-1144]). The court found that in light of the plain language of the applicable state statute,[6] and in

the individual sales transactions as required by section 6052.5 and the "sales tax reimbursement" schedules which provide for rounding amounts of "sales tax reimbursement" to whole cents on each individual invoice. In addition, there were either clerical mistakes or additional rounding factors in computing the amount of "sales tax reimbursement" on individual invoices in the amount of $2.90. Based on the foregoing, the parties agree that the refund from the board which is in dispute is $13,908.73 instead of $13,911.84, set forth in Diamond's refund claims.

[6]Subsection 3 of the Massachusetts sales tax in issue provided: "Reimbursement for the tax hereby imposed *shall be paid by the purchaser* to the vendor and each vendor in this commonwealth *shall add to the sales price and shall collect from the purchaser the full amount of the tax imposed by this section,* or an amount equal as nearly as possible or practicable to the average equivalent thereof; *and such tax shall be a debt from the purchaser to the vendor,* when so added to the sales price, and shall be recoverable at law in the same manner as other debts." (Acts and Resolves. 1966, ch. 14, § 1, subsec. 3; italics in original.)

view of the business reality that businessmen would ordinarily attempt to pass the burden of the tax to the bank, the incidence of the tax fell upon the bank that was immune under former 12 United States Code section 548 (*Agricultural Bank, supra,* at pp. 347-348 [20 L.Ed.2d pp. 1143-1148]).

■ Pursuant to the recent decision of the United States Supreme Court in the instant matter (425 U.S. 268 [47 L.Ed.2d 780, 96 S.Ct. 1530]), we must now follow the rule enunciated therein with respect to the immunity of national banks during the period involved in this litigation from the application of the California sales tax to items they purchased from California retailers. Accordingly, the judgment in *Diamond* (No. 35143) is affirmed and the judgment in *Crocker* (No. 35698) is reversed. We also direct the California State Board of Equalization to refund the amount in dispute,[7] $13,908.73, to the appropriate party and to bear the costs on appeal.

Kane, J., and Rouse, J., concurred.

A petition for a rehearing was denied August 13, 1976, and the opinion and the judgment were modified to read as printed above.

---

[7]The State Board of Equalization may grant the refund application of Diamond who stipulated that it would pay the amount refunded to Crocker, or if more expedient, the board may grant the refund application of Crocker.