Filed 9/13/16  P. v. Hines CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ASIAH HINES,<br><br>    Defendant and Appellant. | F071476<br><br>(Super. Ct. No. BF152244A)<br><br><br>**OPINION** |

### THE COURT*

APPEAL from an order of the Superior Court of Kern County.  John S. Somers, Judge.

Sandra Gillies, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Robert C. Nash, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*      Before Levy, Acting P.J., Kane, J. and Detjen, J.

Appellant Asiah Hines pled no contest to second degree murder (count 1/Pen. Code, § 187, subd. (a))[1].  On appeal, she contends the court committed *Marsden*[2] error. We affirm.

## FACTS

On December 16, 2013, at approximately 3:15 a.m., Kern County Sheriff's deputies were dispatched to an apartment on a report of a child not breathing and found an unconscious 18-month-old male child who appeared to have stopped breathing.  The deputies spoke to 17-year-old Hines, who informed them she was the child's babysitter. Hines initially told the deputies that she found the child lying unconscious behind a couch but that she did not know how he got there.

The deputies also interviewed a witness who lives in an apartment at the complex where the child was found.  The witness stated she was by her car, located four to five feet from Hines's bedroom window, when she heard a baby crying and what sounded like the baby being punched in the back three times.  The baby immediately stopped crying.

The child was taken to the hospital where he was pronounced dead.  Hines was contacted again and interviewed.  Hines denied hitting the child or killing him and requested to speak with the child's mother.  At Hines's request, the child's mother was allowed into the interview room.  In response to questioning by the child's mother, Hines eventually admitted hitting the child in the back, punching him in the stomach because he was crying and killing him, although she claimed it was not intentional.  After the child's mother left the room, Hines continued to tell the deputies that she killed the child unintentionally because she just wanted him to stop crying.

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

[2]    *People v. Marsden* (1970) 2 Cal.3d 118.

2

An autopsy disclosed that the child suffered severe internal bleeding and had bruises in multiple locations, including the majority of the left side of his face, a portion of the right side of his face, on his abdomen, on the left side of the neck, on the back of his head, on the inside of his lips, and on his gums. He also suffered a laceration 2.5 inches long and other trauma to his liver, a hematoma to his pancreas, fractures at the base of his skull and mild petechiae, which indicated that he may have been strangled at some point. The cause of death was multiple blunt force trauma.

On June 3, 2014, the district attorney filed an information charging Hines with second degree murder (count 1) and assault on a child under the age of eight by means of force likely to produce great bodily injury that results in death (count 2/§ 273ab, subd. (a)).

On February 19, 2015, Hines entered her plea to count 1 in exchange for the dismissal of count 2 and a stipulated prison term of 15 years to life.

On March 26, 2015, Hines requested substitution of appointed counsel. After hearing and denying the motion, the court sentenced Hines to the stipulated indeterminate term prison term of 15 years to life.

On April 22, 2015, Hines filed a timely appeal.

On April 23, 2015, the court granted her request for a certificate of probable cause.

## DISCUSSION

### The Marsden Hearing

At her sentencing hearing on March 25, 2015, Hines told defense counsel Janice Kim she wanted to move to withdraw her plea. After counsel advised the court that the grounds for the motion implicated a conflict of interest or issues relating to Hines's representation by Kim, the court continued the matter to March 26, 2015. On that date, the court conducted a hearing on Hines's motion in closed session.

During the hearing, the court first allowed Hines to state why she wanted to withdraw her plea. Hines complained that she was a minor when she was interrogated

3

about the crime and she was not advised that she had a right to have a parent present. She also suggested that the district attorney waited until she was 18 to file charges against her so that she could be prosecuted as an adult.

Defense counsel, in pertinent part, replied that she advised Hines that the district attorney had the authority to charge her as an adult and that they had to "deal with that." Defense counsel also stated the interrogation by the deputies was videotaped, and during the interrogation Hines heard the mother of the victim crying outside the interrogation room and asked to speak with her. The deputies initially refused. However, Hines was insistent and eventually the deputies permitted her to speak to the victim's mother, which allowed them to obtain many statements from Hines that hurt her defense. Defense counsel told Hines she would try to exclude her statements, but there was a significant likelihood many of her statements would be ruled admissible.[3]

Hines responded that she was still in shock when she asked to speak with the victim's mother, and when she asked if she could leave she was told she could not. She also stated that at that point the detectives read her *Miranda*[4] rights to her. Hines then stated:

> "And I told them -- during when they asked me how did I perform CPR on [the child], I had asked them for a lawyer, but I guess I didn't say it right, like, 'I don't want to talk to you anymore. I want a lawyer.' I didn't know you had to say that specifically. I thought you could just say, 'I want a lawyer.' And -- yeah."

The court, in pertinent part, then stated that nothing it had heard indicated Hines had received ineffective assistance of counsel or that there was a conflict of interest or a

---

[3] Defense counsel also informed the court that Hines and the victim's mother lived together and that the victim's mother was not Hines's mother.

[4] *Miranda v. Arizona* (1966) 384 U.S. 436.

4

breakdown in communication that could result in ineffective assistance of counsel.[5] In

finding that there was no basis for a motion to withdraw Hines's plea, the court stated:

> "I'll note for the record that it appears that the grounds raised -- well, I don't hear a basis for a motion to withdraw the plea that's been raised at this point in time. These very clearly are, from what I've heard from both parties here, issues that counsel was aware of, discussed with Ms. Hines."

At another point the court stated:

> "It appears to the Court that Ms. Kim has thoroughly reviewed the issues related to [Hine's statements to deputies] and was prepared to make a motion, but there is [a] very good reason, based on the description *that I've heard of the circumstances of [the interrogation of Hines by deputies], why even if portions of those statements might have been successfully excluded during portions of the trial, other portions virtually certainly would not*; and under the circumstances, it would appear to the Court that that doesn't serve either as a basis for a motion to withdraw the plea because there is no indication [that there was] a withdrawal of a meritorious defense based on the plea being entered in this matter and the matter not proceeding to trial.

> "For that reason I don't find there's any basis or reason for appointing alternate counsel to represent Ms. Hines [for the purpose of] bring[ing] a motion to withdraw a plea in this particular case. It does not appear to the Court there such a basis for a motion so the motion for a substituted appointed counsel to raise a motion to withdraw a plea will be denied at this point in time as it does not appear there is a legal basis for either, so the motion will be denied at his time." (Italics added.)

Hines then advised the court she wanted to add that she did not believe her counsel

helped her defense and was working against her because counsel told Hines there was

nothing she could do in her defense and she could not find anything to help her. Hines

also told the court that she had been evaluated by a doctor but defense counsel told her

the evaluation did not help because of the incriminating statements Hines made to the

---

[5]     The court also addressed Hines's concern that the prosecutor waited until she was 18 years old to charge her so that she could be charged as an adult. The court explained that pursuant to Welfare and Institutions Code section 707, subdivision (d)(1) the prosecutor had the authority to charge a minor as an adult for some offenses, including the ones involved in the instant case.

deputies. Hines then attempted to downplay the significance of those statements by claiming she told the deputies "anything they wanted to hear" because she was in shock and scared and that she told the victim's mother what she wanted to hear because the mother was crying.

Defense counsel replied that she hired a doctor to evaluate Hines's sanity when the offense occurred and her competency to stand trial but that she would not have called the doctor to testify regarding those matters. Defense counsel also hired a pathologist to review the autopsy report and photographs but counsel determined that the pathologist did not provide the defense any useful information. Defense counsel further stated that she explained to Hines that they were in a "challenging" position, that their chances of success at trial were "unlikely," and that they "would have to consider a plea bargain in the case to minimize the time [Hines served] and [increase] her possibility of getting released on parole."[6]

The court asked if Hines had any additional comments. Hines stated that she was in a relationship with the victim's mother, that the mother "came back," hit the victim and made *some* of the bruises on him, and that Hines took the blame for her. Defense counsel responded that Hines had never provided her with that information. Defense counsel also explained the incident reports indicated that prior to the assault, the victim's mother had been gone for at least two days, no one else but Hines was present with the victim for at least a day and a half prior to the assault, and that a defense investigator was unable to obtain any statements from witnesses that indicated anyone else was present with the victim "during the time frame involved."

---

**6**     As previously noted, Hines pled no contest to second degree murder for a stipulated indeterminate term of 15 years to life (§ 190, subd. (a)). Assault of child under age eight resulting in death is punishable by a term of 25 years to life. (§ 273ab, subd. (a)). By pleading to second degree murder in exchange of dismissal of the assault charge, Hines reduced her potential indeterminate sentence by 10 years.

6

The court then reaffirmed its previous ruling denying the motion to withdraw plea and the motion for appointment of new counsel.

*Analysis*

Hines contends the court's inquiry into her representation by defense counsel was inadequate because the court did not ask Hines about her invocation of her right to counsel or ask defense counsel if she considered suppressing Hines's statements. Alternatively, she contends the court abused its discretion in failing to appoint new counsel because she made a sufficient showing that defense counsel may have forfeited a critical defense. There is no merit to these contentions.

> "[A] trial court is obligated to conduct a *Marsden* hearing on whether to discharge counsel for all purposes and appoint new counsel when a criminal defendant indicates after conviction a desire to withdraw his plea on the ground that his current counsel provided ineffective assistance only when there is 'at least some clear indication by defendant,' either personally or through his current counsel, that defendant 'wants a substitute attorney.' [Citation.] …[A]dditionally[,] … at any time during criminal proceedings, if a defendant requests substitute counsel, the trial court is obligated, pursuant to our holding in *Marsden,* to give the defendant an opportunity to state any grounds for dissatisfaction with the current appointed attorney. [Citation.] In turn, if the defendant makes a showing during a *Marsden* hearing that his right to counsel has been ' " 'substantially impaired' " ' [citation], substitute counsel must be appointed as attorney of record for all purposes." [Citation.] (*People v. Sanchez* (2011) 53 Cal.4th 80, 88-90.)

The record shows that the court conducted a thorough inquiry into Hines's dissatisfaction with defense counsel—it gave Hines ample opportunity to voice her reasons for her dissatisfaction with defense counsel, it sought counsel's response, and it carefully listened to both sides.

> "[I]nquiry into the attorney's state of mind is required only in those situations in which a satisfactory explanation for counsel's conduct or attitude toward his client is necessary in order to determine whether counsel can provide adequate representation." (*People v. Penrod* (1980) 112 Cal.App.3d 738, 747.)

7

In response to Hines's initial statements to the court, defense counsel explained that during her interrogation by deputies, Hines requested and eventually was allowed to speak to the victim's mother and in doing so, she made many statements that were damaging to her defense. Counsel further stated that she did not think she would be able to suppress these statements because they were made not just to law enforcement officers and because Hines requested to make them. Counsel was correct.

> "If the defendant receives *Miranda* warnings, and thereafter requests counsel, ' "the interrogation must cease until an attorney is present." ' [Citations.] … However, if the defendant thereafter initiates a statement to police, 'nothing in the Fifth and Fourteenth Amendments ... prohibit[s] the police from merely listening to his voluntary, volunteered statements and using them against [the defendant] at the trial.' " (*People v. Bradford* (1997) 14 Cal.4th 1005, 1033-1034.)

By a parity of reasoning, even if Hines invoked her right to counsel prior to making incriminating statements to the victim's mother, because these statements were made voluntarily they would have been admissible even though they were made during the course of her interrogation by the deputies. In view of this, there was no reason for the court to ask Hines about her invocation of her right to counsel, or to ask defense counsel if she considered a suppression motion on this basis because a motion on this ground would not have resulted in the suppression of many of Hines's incriminating statements, including her admission that she killed the victim. Thus, there is no merit to Hines's contention that the court's inquiry of her and defense counsel was inadequate.

In her reply brief, appellate counsel cites to *Moore v. Czemiak* (9th Cir. 2008) 534 F.3d 1128 (*Moore I*), in support of Hines's argument that the court's *Marsden* inquiry was inadequate. In *Moore I*, which involved a prosecution for murder, defense counsel failed to file a motion to suppress a taped confession Moore gave to authorities that was clearly inadmissible because it was extracted as a result of a promise and it was obtained after Moore's request for counsel was ignored. (*Id.* at p. 1130.) Counsel did not move to suppress the confession because he erroneously believed such a motion would

8

not succeed and that the confession was not prejudicial because Moore told two people about the crime. (*Ibid*.) Counsel advised Moore that under the circumstances, a plea to felony murder was the best that Moore could do and Moore pled no contest to that charge. (*Ibid*.) On appeal, the state court found that the failure to move to suppress Moore's taped confession was not prejudicial because Moore had told two others about the crime. (*Ibid*.)

However, in *Moore I*, the Ninth District Court of Appeals held that the representation by Moore's attorney was deficient because he failed to file a motion to suppress Moore's taped confession, and that the failure to seek suppression was prejudicial in light of the state's case without the confession. (*Id*. at pp. 1153-1154.) Thus, the court granted Moore's petition's for a writ of habeas corpus and directed the state to permit him to withdraw his plea or to release him from custody. (*Id*. at p. 1154.)

The opinion in *Moore I* was withdrawn and superseded on denial of rehearing by *Moore v. Czerniac* (9th Cir. 2009) 574 F.3d 1092, 1093 (*Moore II*), which mirrored its previous finding of deficient representation and prejudice and again granted Moore habeas relief. (*Moore II*, *supra*, at p. 1118.)

In *Premo v. Moore* (2011) 562 U.S. 115 (*Premo*), the United States Supreme Court reversed the judgment in *Moore II* stating:

> "The state court would not have been unreasonable to accept as a justification for counsel's action that suppression would have been futile in light of Moore's other admissible confession to two witnesses. *This explanation confirms that counsel's representation was adequate under Strickland* [*Strickland v. Washington* (1984) 466 U.S. 668], so it is unnecessary to consider the reasonableness of his other justification—that a suppression motion would have failed. Plea bargains involve complex negotiations suffused with uncertainty, and defense counsel must make strategic choices in balancing opportunities—pleading to a lesser charge and obtaining a lesser sentence—and risks—that the plea bargain might come before the prosecution finds its case is getting weaker, not stronger. Failure to respect the latitude *Strickland* requires can create at least two problems. First, the potential for distortions and imbalance that can inhere

in a hindsight perspective may become all too real; and habeas courts must be mindful of their limited role, to assess deficiency in light of information then available to counsel. Second, ineffective-assistance claims that lack necessary foundation may bring instability to the very process the inquiry seeks to protect because prosecutors must have assurances that a plea will not be undone in court years later. In applying and defining the *Strickland* standard—reasonable competence in representing the accused—substantial deference must be accorded to counsel's judgment. The absence of a developed and extensive record and well-defined prosecution or defense case creates a particular risk at the early plea stage. Here, Moore's prospects at trial were anything but certain. *Counsel knew that the two witnesses presented a serious strategic concern and that delaying the plea for further proceedings might allow the State to uncover additional incriminating evidence in support of a capital prosecution. Under these circumstances, counsel made a reasonable choice.*" (*Premo*, *supra*, 562 U.S. at p. 116, italics added.)

Preliminarily we note that "[a]n appellate opinion which has been subsequently reversed by a court of superior jurisdiction, or vacated by the court which rendered it is ordinarily of no precedential value and is not to be cited as controlling authority for any purpose." (*Occidental Life Ins. Co. v. State Bd. of Equalization* (1982) 135 Cal.App.3d 845, 848, fn. 1.) Thus, appellant's reliance on *Moore* I is improper. It is also misplaced because in *Premo*, the Supreme Court ultimately held that in circumstances similar to those here, counsel acted reasonably when he failed to seek to suppress a defendant's confession in light of the defendant's incriminating statements to others.

Moreover, *Moore I* is inapposite because here there is other strong evidence of Hines's guilt besides Hines's statements to the deputies and to the victim's mother. The record indicates Hines was the victim's babysitter. Although during the *Marsden* hearing Hines's claimed the victim's mother had returned home and inflicted some of the victim's injuries, the record indicates that Hines was alone with the victim when he suffered the fatal injuries. For example, the incident report indicated that Hines was alone when arrested and that Hines told responding officers that she was babysitting while the mother was gone visiting friends for two days. Further, defense counsel's interview of the mother and neighbors indicated no one else was present with Hines and

10

the victim for at least a day and half prior to the victim being fatally injured. Additionally, during the *Marsden* hearing, Hines attributed only "some of [the] bruises" on the victim to the victim's mother. And around the time of the incident, a witness heard a baby crying, sounds as if the baby had been struck, and then silence. Since the autopsy report indicated the victim had internal bleeding from a lacerated liver, this was strong circumstantial evidence that along with the evidence discussed above, overwhelmingly indicated that the night he died, the victim was beaten by Hines while in her care. Accordingly, we conclude that the court did not err by its failure to inquire further of Hines or defense counsel.

For these same reasons we also reject Hines's contention that her statements established that counsel deprived her of a critical defense and that the court erred by its failure to grant her *Marsden* motion.

Moreover, *Marsden* error is not reversible if it is harmless beyond a reasonable doubt. (*People v. Washington* (1994) 27 Cal.App.4th 940, 944.) Because the evidence of Hines's guilt was overwhelming and counsel had a sound tactical basis for not seeking suppression of Hines's statements to the deputies, it is extremely unlikely the court would have granted her *Marsden* motion even if it had inquired further of her and counsel. Accordingly, we further conclude that if *Marsden* error occurred, it was harmless beyond a reasonable doubt.

## DISPOSITION

The order is affirmed.