[Civ. No. 35143. First Dist., Div. Two. June 24, 1975.]

DIAMOND NATIONAL CORPORATION, Plaintiff and Respondent, v. STATE BOARD OF EQUALIZATION, Defendant and Appellant.

[Civ. No. 35698. First Dist., Div. Two. June 24, 1975.]

CROCKER-CITIZENS NATIONAL BANK, Plaintiff and Appellant, v. STATE BOARD OF EQUALIZATION, Defendant and Respondent.

## Counsel

Evelle J. Younger, Attorney General, Ernest P. Goodman, Assistant Attorney General, and Philip M. Plant, Deputy Attorney General, for Defendant and Appellant and Defendant and Respondent.

Morrison, Foerster, Holloway, Clinton & Clark, Morrison & Foerster, Franklin C. Latcham, James E. Merritt and Prentiss Willson, Jr., for Plaintiff and Respondent and for Plaintiff and Appellant.

## OPINION

**TAYLOR, P. J.**—These combined appeals[1] from two actions for refunds of state and local[2] sales taxes paid to the State Board of Equalization in 1968, consolidated for trial on stipulated facts, raise the question of whether, pursuant to Revenue and Taxation Code section 6052, the legal incidence of the California taxes falls on the purchasing national bank (Crocker), or on the retailer-vendor (Diamond). The parties agree that if the legal incidence of the tax is on Crocker, it is barred by former 12 United States Code section 548.[3] For the reasons set forth below, we have concluded that under California law, the legal incidence of the tax is on the vendor-retailer, and the judgment in favor of Diamond in No. 35143 must be reversed, and the judgment of dismissal as to Crocker in No. 35698 affirmed.

As the facts were stipulated, we set forth briefly only the basic facts pertinent to the central legal issue before us. Diamond supplied printed forms and other items of tangible personal property to Crocker for use in its business as a chartered national bank. The parties understood and agreed that the item prices stated by Diamond were exclusive of "sales tax reimbursement," which would be added to the stated price in

[1]In No. 35143, Diamond's action for a refund, the court below entered judgment in favor of Diamond and the board appeals. In No. 35698, Crocker's action for a refund filed on the theory that it was the taxpayer, the only issue was Crocker's standing to sue. As Diamond stipulated that it would pay to Crocker the amount refunded pursuant to Revenue and Taxation Code section 6054.5, the court dismissed Crocker's action as moot and Crocker appeals.

[2]As the local sales tax law (Rev. & Tax. Code, § 7200 et seq.), with certain exceptions not pertinent here, in effect, incorporates by reference the state Sales and Use Tax Law (Rev. & Tax. Code, § 6001 et seq.), we shall simply refer to the California sales taxes.

[3]National banks, such as Crocker, may be taxed by a state only as provided by Congress (*Security-First Nat. Bk.* v. *Franchise Tax Bd.*, 55 Cal.2d 407, 413 [11 Cal.Rptr. 289, 359 P.2d 625]). At the time here pertinent, 12 United States Code section 548 provided that states may tax national banks only for: 1) national bank shares; 2) dividends derived from taxable income of an owner or holder thereof; 3) net income of such associations; and 4) according to or measured by their net income. Subsequently the statute was amended (Pub.L. 91-156, 83 Stats. 434, enacted Dec. 24, 1969) and became effective at date of enactment, with a permanent amendment effective subsequently that removed the former exemption from state sales and use taxes.

computing the total amount Crocker would pay for the merchandise. During the period in issue (Mar. 25, 1968-June 16, 1968), Crocker paid the sum of $292,086.49, of which $278,174.55 represented the stated price and $13,911.84 represented "sales tax reimbursement."[4] Diamond included the $278,174.55 in tax returns filed with the board, paid the appropriate tax, and subsequently filed for refund of $13,908.73;[5] Crocker also filed for a refund of the same amount. The board disallowed both refunds. Diamond agreed that any refund returned to it would be refunded to Crocker pursuant to Revenue and Taxation Code section 6054.5 and *Decorative Carpets, Inc.* v. *State Board of Equalization,* 58 Cal.2d 252 [23 Cal.Rptr. 589, 373 P.2d 637].

Revenue and Taxation Code section 6052 provides: "The tax hereby imposed shall be collected by the retailer from the consumer in so far as it can be done."

Preliminarily we note that our Supreme Court long ago held that this statute imposes a vendor tax (*Western L. Co.* v. *State Bd. of Equalization,* 11 Cal.2d 156, 162 [78 P.2d 731, 117 A.L.R. 838]). In *Western Lithograph,* the court construed statutes of 1933, chapter 1020, page 2602, section 8½, the predecessor of Revenue and Taxation Code section 6052.

Diamond, relying on *Agricultural Bank* v. *Tax Comm'n,* 392 U.S. 339 [20 L.Ed.2d 1138, 88 S.Ct. 2173], as recently reaffirmed in *United States* v. *Mississippi Tax Comm'n.* (1975) 421 U.S. 599 [44 L.Ed.2d 404, 95 S.Ct. 1872], urges that since we are construing a federal exemption, we are bound to conclude that the legal incidence of the tax fell on the purchaser. However, the question presented by a claim of exemption under a federal statute granting immunity to national banks from state sales taxes goes beyond the mere claim of an automatic exemption for a federal agency. The national bank must also show that

---

[4]The term "sales tax reimbursement" is noted in the Revenue and Taxation Code to describe amounts such as those paid by Crocker to Diamond, which were separately stated on the invoices and therein referred to as "sales tax" or "5% sales tax" and on purchase orders referred to as "tax."

[5]The difference arose because the amount paid by Diamond to the board was based on its total gross receipts while the "sales tax reimbursement" was computed on the basis of the individual sales transactions as required by section 6052.5 and the "sales tax reimbursement" schedules which provide for rounding amounts of "sales tax reimbursement" to whole cents on each individual invoice. In addition, there were either clerical mistakes or additional rounding factors in computing the amount of "sales tax reimbursement" on individual invoices in the amount of $2.90. Based on the foregoing, the parties agree that the refund from the board which is in dispute is $13,908.73 instead of $13,911.84, set forth in Diamond's refund claims.

the "incidence" of the tax is on it (*Huntington Nat. Bank of Columbus* v. *Porterfield,* 23 Ohio St.2d 131 [263 N.E.2d 227], cert. den., 401 U.S. 1005 [28 L.Ed.2d 542, 91 S.Ct. 1260]).

In *Agricultural Bank,* the United States Supreme Court squarely rejected the proposition that the legal incidence of a tax always fell on the person legally liable for it, and held that pursuant to the Massachusetts statute there in issue,[6] the Massachusetts Legislature intended that the tax be "passed on" to the purchaser and accordingly was a tax on the purchaser and not the vendor. The court emphasized (at p. 347) that the legislative intent was controlling. In *United States* v. *Mississippi Tax Comm'n., supra,* 421 U.S. at page 608 [44 L.Ed.2d at p. 413], which involved the question of whether the Mississippi wholesale markup fell on the out-of-state distiller or on the purchasing federal military installations,[7] the court emphasized that ". . . the controlling significance of *First Agricultural Bank* for our purposes is the test formulated by that decision for the determination of where the *legal incidence* of the tax falls, namely, that where a state *requires* that its sales tax be passed on to the purchaser and be collected by the vendor from him, *this establishes as a matter of law that the legal incidence of the tax falls upon the purchaser*" (italics supplied).

*Agricultural Bank* thus simply held that: 1) if the tax must be passed on, the incidence is on the purchaser; 2) legislative intent is controlling as

[6]Subsection 3 of the Massachusetts sales tax provides: "Reimbursement for the tax hereby imposed *shall be paid by the purchaser* to the vendor and each vendor in this commonwealth *shall add to the sales price and shall collect from the purchaser the full amount of the tax imposed by this section,* or an amount equal as nearly as possible or practicable to the average equivalent thereof; *and such tax shall be a debt from the purchaser to the vendor,* when so added to the sales price, and shall be recoverable at law in the same manner as other debts." (Acts and Resolves, 1966, ch. 14, § 1, subsec. 3. italics added.)

"This subsection reads to us as a *clear requirement* that the sales tax be passed on to the purchaser . . . There can be no doubt from the clear wording of the statute that the Massachusetts Legislature intended that this sales tax be passed on to the purchaser. For our purposes, at least, that intent is controlling." (*Agricultural Bank, supra,* at pp. 347-348; italics added).

In the decision below that was reversed (229 N.E.2d 245, at pp. 249 and 250), the Massachusetts Supreme Court characterized the Massachusetts tax as a hybrid type distinct from vendor taxes (like California's) and purchaser taxes like those of other states. The United States Supreme Court accepted this characterization and disagreed with the Massachusetts Supreme Court only as to the legal incidence of the tax.

[7]In the recent case, so far as pertinent here, the United States Supreme Court held that since Mississippi tax Regulation 25 provided that military facility shall bear the usual wholesale markup in price and pay the amount directly to the distiller who "in return shall remit the wholesale markup" to the tax commission. under *Agricultural Bank,* the legal incidence of the tax was on the military and therefore barred.

to whether the pass-on is mandatory; and 3) lack of sanction against the vendor for failing to pass-on does not negate a clearly worded pass-on provision. In the *Mississippi Tax Commission* case, *supra,* the United States Supreme Court followed the mandatory pass-on test of *Agricultural Bank, supra.*

■ Unlike the Massachusetts sales tax law or Mississippi tax Regulation 25, this state has no mandatory requirement that its sales taxes be "passed on"[8] to the purchaser. As indicated above, Revenue and Taxation Code section 6052 provides that "[t]he tax hereby imposed shall be collected by the retailer from the consumer *in so far as it can be done.*" It is well settled that "[t]his section *merely allows* a retailer to reimburse himself for payment of the tax. He is *limited* in so doing where the consumer's contractual or constitutional rights are infringed" (Code Commissioners' Note, citing *De Aryan* v. *Akers,* 12 Cal.2d 781 [87 P.2d 695]; (italics supplied)). The retailer is *permitted* to pass the tax on to the consumer, but he is *not charged with a mandatory duty* to collect the tax (*Coast Elevator Co.* v. *State Bd. of Equalization,* 44 Cal.App.3d 576, 588 [118 Cal.Rptr. 818]; *Pac. Coast Eng. Co.* v. *State of California,* 111 Cal.App.2d 31, 34 [244 P.2d 21]). Moreover, "[w]hile the act authorizes the retailer to collect the tax 'from the consumer in so far as the same can be done,' . . . that does not make it a consumer's tax." (*Ainsworth* v. *Bryant,* 34 Cal.2d 465, 474 [211 P.2d 564]).

In *De Aryan* v. *Akers,* 12 Cal.2d 781 [87 P.2d 695], the state Supreme Court declared that the statute ". . . *must be deemed to indicate a reservation* only in those cases where so to pursue the authority of reimbursement to the retailer would infringe the consumer's existing contractual or other constitutional rights." (Id., at p. 786; italics supplied.) Indeed, unlike the mandatory provisions of the Massachusetts statute and the Mississippi tax Regulation 25, Revenue and Taxation Code section 6052 *expressly bars* the right to reimbursement when a constitutional right would be infringed.[9]

In a bootstrap argument, Diamond attempts to equate the caveat of the California statute, "in so far as it can be done," with the language "as

[8]While the term "pass on" is repeatedly used by all courts, presumably as a matter of convenience, the inaccuracy of the use of the term in this manner was recognized in *Lash's Products Co.* v. *United States,* 278 U.S. 175 [73 L.Ed. 251, 49 S.Ct. 100], where the court said at page 176 [73 L.Ed. at p. 252]: "The phrase 'passed the tax on' is inaccurate..."

[9]"The tax hereby imposed shall be collected by the retailer from the consumer *in so far as it can be done.*" (Italics supplied.)

nearly as possible or practicable" from the Massachusetts statute, and further asserts that the *Agricultural Bank* holding regarding the "same provisions" dictates abandonment of the established California construction, because determination of the incidence of the California tax is a federal question and not a state question. However, we find this argument less than convincing for two reasons.

First, in comparing caveats, Diamond takes the Massachusetts "as nearly as possible or practicable" out of context. When read within subsection 3 of the Massachusetts sales tax, as set forth in footnote 7 above, the term clearly refers to collection of the average equivalent of the full amount of the tax. As discussed above, this is *not* the meaning of the California caveat.

Second, as recently stated in *Gurley* v. *Rhoden* (1975) 421 U.S. 200, at page 208 [44 L.Ed.2d 110, 117, 95 S.Ct. 1605]: "[A] State's highest court is the final judicial arbiter of the meaning of state statutes [citation], and therefore our review of the holding of a state court respecting the legal incidence of a state excise tax is guided by the following: 'When a state court has made its own definitive determination as to the operating incidence . . . [w]e give this finding great weight in determining the natural effect of a statute, and if it is *consistent with the statute's reasonable interpretation it will be deemed conclusive.'* " (Italics added.)

Thus, given the clear mandatory wording of both the Massachusetts statute and Mississippi tax Regulation 25, and in view of the obvious difference of Revenue and Taxation Code section 6052 as construed by the courts of this state since its inception, we think neither *Agricultural Bank* nor the *Mississippi Tax Commission* cases have overruled *Western Lithograph* and the other California cases. Further, as an intermediate appellate court, we are bound to follow the construction of a state statute by the decisions of our state Supreme Court (*Market St. Ry. Co.* v. *Cal. St. Bd. Equal.,* 137 Cal.App.2d 87, 98 [290 P.2d 20]).

Accordingly, we need not discuss in great detail two recent federal decisions, cited by Diamond for the proposition that the legal incidence of the California sales taxes is upon the purchaser. The first[10] of these is a federal district court case currently on appeal to the Ninth Circuit, and accordingly of little or no precedential value. The second, *United States* v. *Nevada Tax Commission* (9th Cir. 1971) 439 F.2d 435, summarily

---

[10] *United States* v. *State Board of Equalization* (Civ. No. 72-2568-R).

affirmed a trial court decision[11] that found the legal incidence of the Nevada sales tax to lie with the vendee. Although the Nevada law is similar to the California law, we find the case to be of negligible assistance in determining *California* legislative intent. We think it is well settled by *Western L. Co., DeAryan* and other authorities cited above, that since the vendor is permitted and encouraged but not required to pass on the sales taxes to the consumer, the legal incidence of the California sales taxes falls on the vendor. It follows that the trial court erred[12] in concluding that *Agricultural Bank, supra,* changed the preexisting California law.

Diamond also attempts to expand the scope of *Javor* v. *State Board of Equalization,* 12 Cal.3d 790 [117 Cal.Rptr. 305, 527 P.2d 1153]. However, *Javor* is a limited decision under "unique circumstances" whereby a customer can join the board in an action against the retailer. The *action remains against the retailer,* and the board is joined strictly to protect the integrity of the sales tax by ensuring that the customers receive their refunds. Thus, the retailer is not relieved of the legal incidence of the sales tax.

Diamond also attempts to argue that *Decorative Carpets, Inc.* v. *State Board of Equalization,* 58 Cal.2d 252 [23 Cal.Rptr. 589, 373 P.2d 637], and the enactment of Revenue and Taxation Code section 6054.5 support its position that the legal incidence of the California sales taxes is on the purchaser rather than the vendor. *Javor, Decorative Carpets* and section 6054.5 deal with the refund remedy of customers and do not determine the incidence of the tax. In fact, in Revenue and Taxation Code section 6054.5, the Legislature clearly indicates that "nothing in this legislation shall be construed to affect the basic principle that the

[11]In *Meyer Const. Co.* v. *Corbett,* 7 F.Supp. 616, the federal district court found the tax to be on the retailer rather than the consumer. In discussing the impact of that case, the California appellate court noted that while it should be given persuasive force, it is not binding authority (*People* v. *Herbert's of Los Angeles, Inc.,* 3 Cal.App.2d 482, 484 [39 P.2d 829]). The court below treated the question solely as a federal question, i.e., whether federal instrumentalities are immune from state taxation.

[12]The trial court also erroneously relied on *Panhandle Oil Co.* v. *Knox,* 277 U.S. 218 [72 L.Ed. 857, 48 S.Ct. 451, 56 A.L.R. 583]; however, as noted in *Gurley* v. *Rhoden, supra,* 421 U.S. at page 210 [44 L.Ed.2d at page 118]: "The Court's *Panhandle* opinion does not focus upon whether the Mississippi statute laid the legal incidence of the tax upon the distributor. Rather the rationale was that the tax was bad because, if laid upon distributors, the distributors were able to shift its burden to the purchaser. The Court has since expressly abandoned that view, and has accepted the analysis of the dissent. In *Alabama* v. *King & Boozer, supra,* 314 U.S., at 9, the Court held: 'So far as a different view has prevailed, see *Panhandle Oil Co.* v. *Knox* . . . .. we think it no longer tenable.' "

incidence of the California sales tax is on the retailer." (Stats. 1961, ch. 872, p. 2289).

We need not discuss the authorities from foreign jurisdictions cited by Diamond, as all are factually distinguishable and of no guidance in examining the basic question of the intent of the California Legislature as to which party bears the legal incidence of the sales tax.

Diamond's remaining contentions relating to administrative construction and the 1951 and 1964 Reports of Legislative interim committees are also neither pertinent[13] nor persuasive,[14] and need not be discussed here.

■ Accordingly, we conclude that since the California statute does not mandate that the state and local sales taxes must be passed on to the purchaser and the courts of this state have consistently held that the legal incidence of these taxes is on the vendor, the court below erred in entering judgment in favor of Diamond.

On its appeal, Crocker attempts to argue that the above disposition of Diamond does not necessarily dispose of all of the issues presented. However, in view of our conclusion in the Diamond appeal that the legal incidence of the California sales taxes falls on Diamond, Crocker has no standing to seek a refund from the board. Crocker's contentions pertaining to Revenue and Taxation Code section 6937 are irrelevant in view of the recent holding of *Javor, supra,* that a purchaser has no direct recourse against the board for a refund of excessive sales tax reimbursement paid to the vendor. Of course, our holding has no bearing on the possibility of a contract action by Crocker against Diamond.[15]

[13]The basic sales tax statutes were enacted in 1933 and 1935 and were held in *Western L. Co., supra,* at page 162, to "specially negative any intent of the legislature that the tax should be considered as a tax on the consumer." (Cf. *People* v. *Grazer,* 138 Cal.App.2d 274, 279 [291 P.2d 957].)

[14]For example, Diamond refers to the board's Regulation 1700 which states that each "retailer who collects an amount" must follow certain procedures. This certainly does not remove the element of choice: it merely helps assure that the retailer collects the correct amount of the tax. In this legislative discussion, as in many of its contentions, Diamond fails to clearly and consistently differentiate between the significant *legal incidence* and the economic burden of a tax and consistently interchanges the two concepts.

[15]The vendor is not entitled to a sales tax reimbursement where the provision for payment is not included in the terms of the contract (*Livingston Rock & Gravel Co.* v. *De Salvo,* 136 Cal.App.2d 156 [288 P.2d 317]; *Clary* v. *Basalt Rock Co.,* 99 Cal.App.2d 458 [222 P.2d 24]).

The judgment in Diamond (No. 35143) is reversed and the judgment in Crocker (No. 35698) affirmed.

Kane, J., and Rouse, J., concurred.

Petitions for a rehearing were denied July 24, 1975, and the petition of respondent in No. 35143 and appellant in No. 35698 for a hearing by the Supreme Court was denied August 28, 1975.