[Civ. No. 62555. Second Dist., Div. Two. Sept. 16, 1982.]

OCCIDENTAL LIFE INSURANCE COMPANY OF
CALIFORNIA, Plaintiff and Appellant, v.
STATE BOARD OF EQUALIZATION, Defendant and Respondent.

[And seven other cases.]*

---

*Allstate Insurance Company of California v. State Board of Equalization;
Countrywide Life Insurance Company v. State Board of Equalization; National
American Insurance Company of California v. State Board of Equalization; National
American Life Insurance Company of California v. State Board of Equalization; Pacific Mutual Life Insurance Company v. State Board of Equalization; Pierce National
Life Insurance Company v. State Board of Equalization; Transamerica Life Insurance
and Annuity Company v. State Board of Equalization.

[redacted]

## COUNSEL

Hill, Wynne, Troop & Meisinger, Robert J. Wynne, Louis M. Meisinger and James K. T. Hunter for Plaintiffs and Appellants.

George Deukmejian, Attorney General, and Philip C. Griffin, Deputy Attorney General, for Defendant and Respondent.

## OPINION

**BEACH, J.—**

### NATURE OF APPEAL:

Appeal from a judgment of dismissal, after a demurrer was sustained, of an action brought by several insurance companies as a class

(appellants) against the State Board of Equalization (respondent) for refund of sales taxes paid to retailers on purchases made by appellants.

## The Issue and our Holding:

■ We hold that article XIII (§ 28, subd. (f)) (formerly § 14-4/5) of the California Constitution, together with Revenue and Taxation Code section 12204, which provide that the gross premium receipts tax imposed on insurance companies shall be in lieu of other taxes, does not forbid the imposition of a sales tax on retail sales of personal property to insurance companies.

## Discussion:

Recovery is sought by appellants for taxes paid on retail purchases of personal property for the years 1973 through 1976. During that time California Constitution, article XIII, section 14-4/5 (now § 28, subd. (f)) and Revenue and Taxation Code section 12204 restricted taxation of insurance companies by declaring that the gross premium taxation of insurance companies provided by the state Constitution (now art. XIII, § 28, subds. (a)-(j), inclusive) and implemented by the statute (Rev. & Tax. Code, §§ 12201-12204, inclusive) "... is in lieu of all other taxes and licenses, state, county, and municipal, upon such insurers and their property, except [certain specific items not here relevant]." (Art. XIII, § 28, subd. (f), Rev. & Tax. Code, § 12204.)

Although it has long been indisputably settled in California that the legal incidence of the sales tax is imposed on the retailer for the privilege of doing retail business (*Western Lithograph Co.* v. *State Bd. of Equalization* (1938) 11 Cal.2d 156 [78 P.2d 731, 117 A.L.R. 838]) (hereafter *Western Lithograph*), appellants nonetheless argue that by reason of the retailer's "passing on" the tax to the ultimate consumer, here appellants, they are thus in fact bearing the burden and are therefore unlawfully being taxed.

It is unnecessary to discuss the merits of appellants' argument or to engage in lengthy examination of the semantics as to who is bearing the burden of the tax and why, and how it is or is not passed on from retailer to consumer. It is sufficient to note that appellants' argument has been considered and repeatedly rejected by numerous cases (see cases listed in *Western Lithograph, supra*, at pp. 162-163). It was expressly rejected by the California Supreme Court in *Western Lithograph, su-*

*pra*, which holds as a matter of law that the legal incidence of the retail sales tax is on the retailer and not the consumer.

Appellants contend the test for determining the legal incidence of sales taxes set forth in *Western Lithograph* has been repudiated in favor of the test set forth in *Agricultural Bank v. Tax Comm'n* (1968) 392 U.S. 339 [20 L.Ed.2d 1138, 88 S.Ct. 2173] (hereafter *Agricultural Bank*); under the latter test and as expressly ruled by the Supreme Court of the United States, *Diamond National v. State Equalization Bd.* (1976) 425 U.S. 268 [47 L.Ed.2d 780, 96 S.Ct. 1530] (hereafter *Diamond National* (425 U.S. 268)),[1] the incidence of the California sales tax is squarely and exclusively on the consumer. Appellants further bolster their claim by the statement that the "formalistic test for determining the 'legal incidence' of the California Sales Tax applied in *Western Lithograph* ... was abandoned by the California Supreme Court in the landmark case of *Western States Bankcard Assn. v. City and County of San Francisco* (1977) 19 Cal.3d 208 [hereafter *Western Bankcard*] in favor of the more realistic substantive test adopted by the United States Supreme Court in *Agricultural National Bank of Berkshire County v. State Tax Comm., supra*, 392 U.S. 339 . . . ."

Appellants are in error; they misconstrue the holding of both *Diamond National* (425 U.S. 268) and *Western Bankcard*. The rule followed in, and the holding of, *Diamond National* (425 U.S. 268) are inapplicable at bench. *Western Bankcard* did not abandon the rule and

---

[1] The appeal in the case of *Diamond Nat. Corp. v. State Bd. of Equalization* has been considered and opinion rendered on three different occasions. The three opinions are: (1) the original opinion by the California Court of Appeal on June 24, 1975, reported in 49 Cal.App.3d 778 [123 Cal.Rptr. 160]; (*Diamond National* (49 Cal.App.3d 778 herein)); (2) the opinion of the United States Supreme Court on April 19, 1976, reported in 425 U.S. 268 (*Diamond National* (425 U.S. 268 herein)) reversing the first opinion of the California Court of Appeal; and (3) the opinion by the California Court of Appeal of July 20, 1976, reported in 60 Cal.App.3d 283 [131 Cal.Rptr. 528] (*Diamond National* (60 Cal.App.3d 283 herein)) rendered upon remand from the United States Supreme Court and vacating its first opinion in 49 Cal.App.3d 778. An appellate opinion which has been subsequently reversed by a court of superior jurisdiction, or vacated by the court which rendered it is ordinarily of no precedential value and is not to be cited as controlling authority for any purpose. Nonetheless, following the example set by the California Supreme Court in *Western States Bankcard Assn. v. City and County of San Francisco* (1977) 19 Cal.3d 208 [137 Cal.Rptr. 183, 561 P.2d 273] as explained in the opinion we refer to the decision in *Diamond National* (49 Cal.App.3d 778) for the continuing value of its reasoning in *nonfederal* aspects, as did the California Supreme Court in its March 23, 1977, opinion in *Western Bankcard* (19 Cal.3d 208), irrespective of the earlier vacation, the cited 49 Cal.App.3d opinion by the opinion in 60 Cal.App.3d 283.

holding (it says nothing of any "test") of *Western Lithograph* but rather again affirms the *Western Lithograph* case and the long-established state rule that the incidence of retail sales tax is on the retail seller.

Turning first to the two United States Supreme Court decisions primarily urged by appellants, *Agricultural Bank* and *Diamond National* (425 U.S. 268), it is clear that neither one governs, nor applies to, the matter at bench. Both are limited to the issue of a federally created immunity as it limits the right of a state to tax federal banks. By contrast, the matter at bench concerns a *state* constitutional exemption and its effect on a *state* statute and state insurance companies. There is no federal immunity or federal exemption involved.

The language and brevity of the opinion in *Diamond National* (425 U.S. 268), upon which appellants rely, is significant. The entire per curiam opinion reads: "The judgment is reversed. We are not bound by the California court's contrary conclusion and hold that the incidence of the state and local sales taxes falls upon the national bank as purchaser and not upon the vendors. The national bank is therefore exempt from the taxes under former 12 U.S.C. § 548 (1964 ed.), which was in effect at the time here pertinent. *First Agricultural Nat. Bank v. Tax Comm'n*, 392 U.S. 339, 346-348 (1968)."

*Diamond National* (425 U.S. 268) cites only *Agricultural Bank* as authority for its decision. In *Agricultural Bank*, the opinion specifically states: "[b]ecause the question here is whether the tax affects federal immunity, it is clear that *for this limited purpose* we are not bound by the state court's characterization of the tax." (*Agricultural Bank, supra*, 392 U.S. 339, 347 [20 L.Ed.2d 1138, 1144]; italics added.) As a result of the United States Supreme Court's express limitation as to federal tax immunity, California courts are not governed by *Agricultural Bank* or *Diamond National* (425 U.S. 268) in the instant matter. Nor are those cases persuasive authority for California courts to follow. The language in *Agricultural Bank* sounds reasonable. It reads: "It would appear to be indisputable that a sales tax which by its terms *must* be passed on to the purchaser imposes the legal incidence of the tax upon the purchaser." (*Agricultural Bank, supra*, at p. 347 [20 L.Ed.2d at p. 1144]; italics added.) But this observation was part of the court's effort to interpret the intent of the *Massachusetts* Legislature that the sales tax be absolutely passed on to the purchaser. However, this is no limitation on the California courts' freedom to reach a differ-

ent result concerning a different law and its purely local effect based on equally meritorious local policies. The interpretation in *Agricultural Bank* of the Massachusetts statute is not binding on nor necessarily of compelling reasoning to us under the facts at bench.

The "pass-on"[2] provisions of the Massachusetts tax involved in *Agricultural Bank* are different from the "pass-on" provisions of the California tax. In the Massachusetts *Agricultural Bank* case, "pass on" was mandatory. At bench it is only conditionally required. This difference has been determined to be legally significant. (*Diamond Nat. Corp.* v. *State Bd. of Equalization* (1975) 49 Cal.App.3d 778, 783 [123 Cal.Rptr. 160].)

More to the point, as indicated earlier the more important aspect of this case is its interpretation of a state statute in light of the state Constitution as they both affect the state citizens in their state activities; there is no federal immunity involved.

■ Where no federal issue is involved, state courts have final authority to interpret that state's laws. (*Brown* v. *Ohio* (1977) 432 U.S. 161, 167 [53 L.Ed.2d 187, 195, 97 S.Ct. 2221]; *Garner* v. *Louisiana* (1961) 368 U.S. 157, 169 [7 L.Ed.2d 207, 216-217, 82 S.Ct. 248]; *Gurley* v. *Rhoden* (1975) 421 U.S. 200, 208 [44 L.Ed.2d 110, 117-118, 95 S.Ct. 1605]; *Diamond Nat. Corp.* v. *State Bd. of Equalization, supra*, (hereafter *Diamond National* (49 Cal.App.3d 778) at page 784. ■
It therefore follows the solid and thoughtful decision written by Justice Wakefield Taylor for the Court of Appeal in *Diamond National* (49 Cal.App.3d 778) is still valid and contains the correct analysis of the California law as it applies to the matter at bench and to California cases involving no claim to federally created immunity. This continuing validity of the opinion of the California Court of Appeal in *Diamond National* (49 Cal.App.3d 778) was relied on and noted by the California Supreme Court in *Western Bankcard, supra*, 19 Cal.3d 208, at pages 217, 219.

Under California law the legal incidence and the economic burden are two separate and distinct concepts. (*Diamond National* (49 Cal. App.3d 778) at p. 786, fn. 14.) The cases, the statutes, and the adminis-

---

[2]A perhaps inaccurate but abbreviated reference to the features of the sales tax statute, directing recoupment by retailer from the purchaser of the sales tax. (See *Diamond Nat. Corp.* v. *State Bd. of Equalization*, 49 Cal.App.3d 778, 783, fn. 8.)

trative interpretation all say that it is the intention that the legal incidence of the retail sales tax shall be on the retailer.

Contrary to appellants' assertion, *Western Bankcard* did not abandon the rule or change the holding of *Western Lithograph* with respect to the permissibility of taxes on at least local suppliers of goods or services. Nor did it abandon any so-called test. By saying "the person liable for the tax is not always the real taxpayer," quoting an observation in *Colorado Bank v. Bedford* (1940) 310 U.S. 41, 52 [84 L.Ed. 1067, 1074, 60 S.Ct. 800], *Western Bankcard* merely observed that most often the real eventual economic burden is on the consumer. Nonetheless, the court in *Western Bankcard* followed the *Western Lithograph* decision that as a matter of law the incidence of tax is on the seller (or supplier) of goods.

In *Western Bankcard*, the bank-created-and-owned supplier of services to certain state and national banks claimed exemption from the San Francisco County and City tax. The claim was based on the existence of the state Constitution "in lieu tax" (similar to the "in-lieu" tax on insurers here) on banks to which it furnished services, a situation analogous to that at bench. The California Supreme Court there rejected plaintiff's claim of immunity from local tax on the plaintiff's service charges. In passing, the court observed ". . . the mere ability to recoup the loss by raising prices will not necessarily shift the legal incidence of the tax." (*Western Bankcard, supra*, 19 Cal.3d 208, 217.) The court also stated: "The banks chose instead to create an independent organization. This they had a perfect right to do but, in our view, could not enfold this entity with the banks' own 'in lieu' tax immunity. [¶] We conclude that the incidence of the San Francisco payroll expense and gross receipts taxes is upon WSBA, not its exempt bank members. At most, the member banks are subjected to *indirect* taxation by payment of the higher processing fees that WSBA's nonexempt status will necessitate. While it is perhaps unfortunate that efficiency should entail a tax penalty, no real injustice in this particular case is evident. San Francisco's municipal tax ordinances do not single out bank-related businesses or activities, but apply to all locally taxable businesses within the city. [Citations.] Having chosen WSBA's corporate form for its peculiar benefits, the member banks may fairly and reasonably be required to accept the tax burdens necessarily attendant upon that form." (*Western Bankcard, supra*, at pp. 219-220.)

That language applies with equal force to appellants' contentions at bench and compels our decision.

The judgment is affirmed.

Roth, P. J., and Gates, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied November 10, 1982. Newman, J., did not participate therein.