Filed 12/9/21 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| FIRST AMERICAN TITLE INSURANCE COMPANY,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION,<br><br>　　Defendant and Appellant. | D077970<br>(Super. Ct. No. 37-2018-00065184-CU-WM-CTL)<br><br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br><br>NO CHANGE IN JUDGMENT |

THE COURT:


It is ordered that the opinion filed November 12, 2021 be modified as follows:

1.  On page 2 in the third full paragraph, delete the first sentence and replace it with:

> The primary issue on appeal is whether the state may, consistent with Article XIII, § 28(f), impose sales tax on leases of business equipment to a title insurer, made by a lessor who would otherwise be subject to the California sales tax.

2.  At the top paragraph of page 19, after the sentence ending "claims" and before the DISPOSITION, add a new footnote 14 as follows:

> For the same reason, it is unnecessary to consider whether the trial court correctly concluded that the state had been improperly collecting taxes on leases by "non-California lessors to California insurance companies, without regard for whether the non-California lessors had any in-state participation in the lease transaction."  In the trial court, the Department conceded the legal principle that "a completely out-of-state seller who is not responsible to pay sales tax" does not owe sales tax under Regulation 1660(c)(1).  Beyond that, we express no opinion on the issue as it would involve the determination of factual questions not before us.

The petition for rehearing is denied.

There is no change in judgment.

AARON, Acting P. J.

Copies to:  All parties

2

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| FIRST AMERICAN TITLE INSURANCE COMPANY, Plaintiff and Respondent, v. CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION, Defendant and Appellant. | D077970 (Super. Ct. No. 37-2018-00065184-CU-WM-CTL) |


APPEAL from a judgment of the Superior Court of San Diego County, Ronald F. Frazier, Judge. Reversed with directions. Request for judicial notice granted in part and denied in part.

Matthew Rodriguez, Acting Attorney General, Tamar Pachter, Assistant Attorney General, Lisa W. Chao and Van-Dzung V. Nguyen, Deputy Attorneys General for Defendant and Appellant.

Bewley, Lassleben & Miller, Joseph A. Vinatieri and Leighton M. Anderson for Plaintiff and Respondent.

Albert Einstein reportedly said, "The hardest thing in the world to understand is the income tax."[1] The subject of this case—sales and use tax as applied to a title insurance company's lease of business equipment—is perhaps a not too distant second.

Part of the difficulty is that the law is a bit counterintuitive. For example, under the California Revenue and Tax Code: (1) certain leases are taxed as sales, (2) sales tax is imposed on sellers, even though buyers ordinarily pay it as part of the purchase price; (3) use tax is imposed on buyers, although retailers collect and remit it to the state; and (4) as a matter of state *constitutional law*, a title insurer pays an annual tax on certain income "in lieu" of *all* other taxes—which as a practical matter means that a title insurer cannot be required to bear the legal incidence of sales or use tax. (Cal. Const., art. XIII, § 28, subd. (f) (hereafter, Article XIII, § 28(f).)

The primary issue in this case is whether imposing *sales tax* on in-state lessors of business equipment to a title insurer violates Article XIII, § 28(f). The California Department of Tax and Fee Administration (Department) contends it does not because the lessor, not the title insurer/lessee, is the taxpayer. In the Department's view, whether the lessee *reimburses* the lessor for its sales tax obligation is strictly a matter of contract and does not implicate the constitutional limit on taxing insurers.

Conversely, First American Title Insurance Company (First American) points out that in equipment leases *not* involving an insurer, the state assesses a *use tax*, not a sales tax. (Cal. Code Regs., tit. 18, § 1660, subd. (c)(1) (Regulation 1660(c)(1).) But where, as here, the lessee is

[1]    Internal Revenue Service, Tax Quotes <https://www.irs.gov/newsroom/tax-quotes> [as of Nov. 12, 2021], archived at <https://perma.cc/Y586-3A4V>.

2

constitutionally exempt from paying use tax, Regulation 1660(c)(1) solves that problem by providing that sales tax applies instead.

Although technically sales tax is imposed on the seller/lessor, First American contends that the insurer/lessee ends up paying it as part of the rent. Thus, regardless of whether the tax is on the *lessee's use* or instead on the *lessor's sale*, the economic incidence is the same. First American argues that as a result, Regulation 1660(c)(1) imposes a de facto use tax on title insurers in violation of Article XIII, § 28(f). The trial court agreed with First American. It ordered the Department to "remove, strike out and otherwise give no force or effect to that portion of Regulation 1660(c)" providing that when the lessee is not subject to use tax, the sales tax applies.

We reverse. "[T]he legal incidence and the economic burden of sales taxes are two separate and distinct concepts." (*Hibernia Bank v. State Bd. of Equalization* (1985) 166 Cal.App.3d 393, 402.) For example, the federal constitution immunizes the United States from taxation by the states, "but it does not forbid a tax whose legal incidence is upon a contractor doing business with the United States, even though the economic burden of the tax, by contract or otherwise, is ultimately borne by the United States." (*United States v. Boyd* (1964) 378 U.S. 39, 44.) Similarly here, Article XIII, section 28(f) does not prohibit a sales tax whose legal incidence is on a lessor, even though the economic burden of the tax is ultimately borne by the title insurer/lessee. (*International Business Machines v. State Bd. of Equalization* (1980) 26 Cal.3d 923, 927 (*IBM*) ["because . . . insurance companies enjoy[ ] exemption from paying any use tax, the . . . law provide[s] that in such cases the lessor would be liable for a sales tax"].)

3

FACTUAL AND PROCEDURAL BACKGROUND

First American leased computer and other office equipment in transactions constituting continuing sales and purchases under California law.  It claimed that it paid use tax (or alternatively, sales tax reimbursement) on those transactions for the period October 1, 2005 through September 30, 2011.  Asserting the tax violated Article XIII, section 28(f), First American pursued administrative remedies in seeking a refund of slightly more than $785,000.

In February 2016, staff at the Department's predecessor, the California State Board of Equalization (Board), initially denied the claim on the grounds that Regulation 1660(c)(1) authorized the tax to be imposed on the lessors as a sales tax, and the Board lacked authority to declare Regulation 1660(c)(1) unconstitutional.[2]  As it was permitted to do, First American prosecuted an administrative appeal to the elected Board itself.[3]  Its lawyer argued that Regulation 1660(c)(1) is "facially unconstitutional" because it classifies the use tax as a sales tax only for insurance companies, "and only to avoid the effects of the applicable constitutional exemption."

In April 2018, as a result of the administrative appeal, the Board ordered a refund as to out-of-state leasing companies (which did not have the required in-state activities to be subject to California sales tax) but denied the claim as to other leases.  It also declined to find Regulation 1660(c)(1)

_____

[2]     First American acknowledged that the Board lacked jurisdiction to decide the constitutional question but raised the issue to exhaust administrative remedies.

[3]     In 2018, the newly created Department substituted for the Board in any action to which the Board was a party.  (Gov. Code, § 15570.24, subd. (b).)

unconstitutional. Based on the administrative appeal ruling, First American calculated it was entitled to a $721,205.53 refund. The Department, however, challenged that amount and refused to issue a refund.

In June 2018, First American filed a petition for a writ of mandate in the superior court, seeking an order compelling the Department to (1) pay the allowed amount of the refund claim, and (2) "vacate its regulation [i.e., Regulation 1660(c)(1)] imposing a tax on tax-exempt lessees of tangible personal property."[4]

In October 2019, the parties settled the case in part, stipulating to a court order that the Department refund $721,205.53 plus interest.[5] In a "Consent Agreement" made part of the order, the parties agreed the refund claim was now "moot," but First American reserved its right to litigate whether Regulation 1660(c)(1) was unconstitutional. Both sides asked the trial court to adjudicate that issue. Additionally, in its reply trial brief, First American stated it had "parallel refund claims" for subsequent years that "are still being held by [the Department] without any action being taken on them, one way or another." It asked the court to "compel the agency to act on the pending refund applications in a manner consistent with applicable law."

After conducting a hearing, the court granted the writ petition, determining that Regulation 1660(c)(1) evades and circumvents "the constitutionally imposed 'in lieu' limitation." Alternatively, the court also found that Regulation 1660(c)(1) conflicts with Revenue and Taxation Code section 6203, subdivision (b), which the court interpreted to preclude

---

[4] In its writ petition, First American stated it was "not seeking recovery with respect to the claim that has been disallowed."

[5] In early November 2019, First American acknowledged receiving payment.

imposing sales tax on equipment leases.[6] The court also ruled that First American was entitled to attorney's fees in an amount to be determined postjudgment.[7] The court issued a judgment in First American's favor and a writ of mandate directing the Department:

> "(a) to remove, strike out and otherwise give no force or effect to that portion of Regulation 1660(c) of the Sales and Use Tax Regulations, as codified in title 18 of the California Code of Regulations § 1660(c)(1), which provides, 'When the lessee is not subject to the use tax (for example, insurance companies), the sales tax applies. The sales tax is upon the lessor and is measured by the rentals payable['];[ ] and [¶]

> "(b) to refund to petitioner First American Title Insurance Company, together with applicable interest, all sums paid as either sales or use tax for or with respect to lease of tangible personal property within the scope of said Regulation for any refund application now pending before respondent [Department], within 60 days . . . ."

## DISCUSSION

### A. *Regulation 1660(c)(1) is Not Unconstitutional*

#### 1. *Constitutional Provisions*

The economics of the insurance industry differs from that of most other businesses. Businesses generally calculate income by subtracting costs incurred in producing a good or service from revenues received from their

---

[6] Statutory references are to the Revenue and Taxation Code unless otherwise specified. Section 6203, subdivision (b) provides: "As respects leases constituting sales of tangible personal property, the tax shall be collected from the lessee at the time amounts are paid by the lessee under the lease."

[7] Ultimately, the court awarded over $204,000 in attorney's fees under section 7156, which requires a finding that the state's litigation position "was not substantially justified." (§ 7156, subd. (c)(2)(A)(i).) On our own motion, we stayed briefing in the separately docketed attorney's fee appeal pending disposition here.

6

sale. But insurance companies collect revenues up front (in the form of premiums), and then pay claimants based on contingent events that may occur many months or even years later. It can be difficult to match-up revenues to related expenses. Accordingly, because " 'an accurate determination of the theoretically appropriate amount of taxable income proves very difficult to achieve in practice,' " a gross premiums tax was adopted for taxing insurers. (*Myers v. Board of Equalization* (2015) 240 Cal.App.4th 722, 736.)

Article XIII, section 28(f) provides that "an insurer transacting title insurance" in California shall pay an annual tax on "all income upon business done in this state" except interest and dividends, rents from real property, profits from the sale or other disposition of investments, and income from investments. This is called an "in lieu" tax—aptly named because subject to certain enumerated exceptions, "[t]he tax imposed on insurers by this section is in lieu of all other taxes . . . upon such insurers and their property . . . ." (*Ibid.*)

2. *Basic Principles of Sales Tax*

What we call sales tax is not actually a tax on individual sales. Rather, it is imposed upon the seller for the "privilege of selling tangible personal property at retail." (§ 6051.) Sales tax is assessed at a fixed rate upon gross receipts, not on the individual sales. (*Xerox Corp. v. County of Orange* (1977) 66 Cal.App.3d 746, 756 (*Xerox Corp.*).)

The legal incidence of sales tax is on the seller, not the consumer. (*Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1103 (*Loeffler*).) "The tax relationship is between the retailer only and the state; and is a direct obligation of the former." (*Livingston Rock & Gravel Co. v. De Salvo* (1955) 136 Cal.App.2d 156, 160.)

7

Thus, "When we go to a store . . . we pay sales tax on many of the things we buy.  Legally speaking, though, what we commonly call sales tax is actually sales tax *reimbursement* because the tax applies to the retailer, not the customer.  [Citation.]  In other words, the retailer is the taxpayer responsible for paying sales tax; when a customer pays sales tax on a transaction, the customer is actually reimbursing the retailer for its sales tax liability arising from the transaction."  (*Loeffler, supra,* 58 Cal.4th at p. 1135 (dis. opn. of Lui, J.).)

In California, no law requires a seller to recoup sales tax from the buyer.  Whether a sales tax reimbursement amount will be added to the purchase price is a matter of contract between the retailer and consumer:

> "Whether a retailer may add sales tax reimbursement to the sales price of the tangible personal property sold at retail to a purchaser depends solely upon the terms of the agreement of sale."  (Civ. Code, § 1656.1, subd. (a).)

Of course, the reality is "the [sales tax] onus is passed down on the commercial chain, link by link, until it is diffused in the pool of ultimate consumers."  (*Western States Bankcard Assn. v. City and County of San Francisco* (1977) 19 Cal.3d 208, 217–218.)  But this is not unique to tax. The economic burden of most sales costs is usually passed down to consumers as part of the purchase price.  (See *Farm & Home Sav. Asso. v. Spradling* (Mo. 1976) 538 S.W.2d 313, 316.)

The key point is that the legal incidence of the sales tax can be, and usually is distinct from its economic burden.  By statute, the legal incidence of sales tax is always on the seller.[8]  (§ 6051.)  A seller's contractual right to require the buyer to pay the amount of tax as part of the purchase price does

---

[8]    Section 6051 provides, "For the privilege of selling tangible personal property at retail a tax is hereby imposed upon all retailers."

not shift the legal incidence from seller to buyer.  (*Occidental Life Ins. Co. v. State Bd. of Equalization* (1982) 135 Cal.App.3d 845, 847 (*Occidental Life*).)

Thus, Article XIII, section 28(f) does not forbid imposing sales tax on sales of goods *to* an insurance company.  For example, if First American purchases a box of copy paper from an office supply store, the seller will undoubtedly charge not only the price of the paper, but also a percentage of that price as sales tax.  Under section 6051, the incidence of the sales tax is on the retailer, even though First American bears the economic burden.  Transactions like this occur all the time, and they do not violate Article XIII, section 28(f) because the insurer is not being taxed—the seller is.  The buyer is paying sales tax reimbursement, not the tax itself.  (See *Occidental Life*, *supra*, 135 Cal.App.3d at p. 847.)

3.  *Basic Principles of Use Tax*

Certain out-of-state retailers are not subject to California law, including its sales tax law.  This can place in-state sellers (who pass the sales tax to their customers in the form of higher prices) at a competitive disadvantage.  How does the state impose the economic equivalent of sales tax where the seller is exempt from sales tax?  By imposing a tax in the same amount on the in-state *purchaser*, for the privilege of *using* the property in California.  (See *MCI Communications Services, Inc. v. California Dept. of Tax & Fee Administration* (2018) 28 Cal.App.5th 635, 642.)  " 'The two taxes, sales and use, are mutually exclusive but complementary, and are designed to exact an equal tax based on a percentage of the purchase price of the property in question.' [Citation.]  Because they are mutually exclusive, either sales tax or use tax may apply to a single transaction, but not both.  Unlike sales tax, which is imposed on the retailer, the person storing, using, or

otherwise consuming the tangible personal property at issue is liable for the payment of use tax." (*Ibid.*)

Section 6401 provides the order of analysis in the typical case involving the sale of personal property to someone using it in California. First, sales tax applies. But if sales tax does not apply, then use tax does:

> "The storage, use, or other consumption in this state of property, the gross receipts from the sale of which . . . were included in the measure of the sales tax, is exempted from the use tax . . . ." (§ 6401; see *Bank of America Nat'l Trust & Sav. Asso. v. State Bd. of Equal.* (1962) 209 Cal.App.2d 780, 791 (*Bank of America*).)

Although use tax is imposed at the same rate as is sales tax, there is a significant difference between the two. Whereas the legal incidence of sales tax is on the seller, the legal incidence of use tax is on the buyer. (*Loeffler*, *supra*, 58 Cal.4th at p. 1104, fn. 5.)

But to assist the state in collecting use tax, the "retailer engaged in business in this state" is required to collect it from the buyer and remit it to the state.[9] (§ 6203, subd. (a).) The amount of the use tax (as distinguished from the use tax itself) becomes a debt owed by the seller to the state. (*Bank of America, supra*, 209 Cal.App.2d at p. 792.) And if the seller does not collect the use tax, the seller is liable to the state for the amount—not as a tax, but as damages for default in his or her duty as collection agent. (*Id.* at pp. 793, 799.)

---

[9] The term " '[r]etailer engaged in business in this state' " is defined in section 6203, subdivision (c).

4. *Sales and Use Tax as Applied to Equipment Leases*

Before 1965, receipts from a lease of personal property were not necessarily subject to either sales or use tax. (*IBM*, *supra*, 26 Cal.3d at p. 927.) Lessors who manufactured the equipment they leased typically elected to pay sales or use tax on the costs of parts and materials used in manufacturing the property to be leased. Those costs would not include labor, overhead, and profit that would be reflected in the rental price. As a result, the manufacturer/lessor avoided all sales and use taxes except those relatively small amounts on raw materials used in manufacturing.

Perceiving this situation as something of a tax loophole, in 1965 the Legislature amended the law to directly tax certain leases of personal property. (See *Culligan Water Conditioning v. State Bd. of Equalization* (1976) 17 Cal.3d 86, 94 (*Culligan Water*).) Some of the statutory changes subjected certain equipment leases to use tax. For example, section 6009 was amended to provide that "use" includes the possession of tangible personal property by a lessee under a lease. (Stats. 1965, 1st Ex. Sess., ch. 2, § 5, p. 5445.) And section 6390 was enacted to provide that rentals of tangible personal property are exempt from sales tax "when such rentals are required to be included in the measure of use tax . . . ." (Stats. 1965, 1st Ex. Sess., ch. 2, § 20, p. 5451.)

The 1965 legislation also made certain leases subject to *sales* tax by (1) adding section 6006.1 to provide that a lease of tangible personal property is a "continuing sale in this state by the lessor for the duration of the lease . . . ." (Stats. 1965, 1st Ex. Sess., ch. 2, § 3, p. 5445); (2) amending section 6010 by adding subdivision (e) to include a lease of tangible personal property (with enumerated exceptions) within the definition of "purchase" (Stats. 1965, 1st Ex. Sess., ch. 2, § 6, p. 5445); and (3) adding section 6010.1

11

to provide that a lease of tangible person property is a "continuing purchase." (Stats. 1965, 1st Ex. Sess., ch. 2, § 7, p. 5446.) The 1965 law "generally imposed a *use* tax on the lessee, the tax being measured by the lessee's rental payments that were collected by the lessor." (*IBM*, *supra*, 26 Cal.3d at p. 927; see also *Debtor Reorganizers, Inc. v. State Bd. of Equalization* (1976) 58 Cal.App.3d 691, 698.)

But what about a situation where, as here, the lessee is an insurer that is constitutionally exempt from paying use tax? Does the tax collector go away empty handed? Not surprisingly, the answer is no. Regulation 1660(c)(1) provides in part:

> "(1) Nature of Tax. In the case of a lease that is a 'sale' and 'purchase' the tax is measured by the rentals payable. Generally, the applicable tax is a use tax upon the use in this state of the property by the lessee. The lessor must collect the tax from the lessee at the time rentals are paid by the lessee. . . . [¶]
>
> "*When the lessee is not subject to use tax (for example, insurance companies), the sales tax applies. The sales tax is upon the lessor and is measured by the rentals payable.*" (Italics added.)

First American contends this taxing scheme violates Article XIII, section 28(f) because by transforming use tax into sales tax, "it attempts to accomplish, indirectly, the *same tax outcome* that . . . the California Constitution . . . does not permit to be imposed directly." As explained below, this contention fails because it ignores the well-settled distinction between the legal incidence and economic burden of sales and use tax. [10]

---

[10] The Department requests that we take judicial notice of two memoranda from a legislator to the governor relating to the enactment of the 1965 legislation, as well as requesting judicial notice of Board of Equalization ruling No. 70 (1966), and the rulemaking file for Regulation 1660. First American opposes the request with respect to the legislative history

12

5. *Regulation 1660(c)(1) Does Not Impose a Constitutionally Prohibited Use Tax on Title Insurers.*

Although the parties have not cited any published case directly on point, two tax cases involving California insurers point the way. In *Occidental Life*, a life insurance company sought a refund for sales tax reimbursement it had paid on retail purchases of personal property. (*Occidental Life*, *supra*, 135 Cal.App.3d at p. 847.) Based on what is now Article XIII, section 28(f), the insurer argued that because sales tax reimbursement was part of its purchase price, the insurance company was "in fact bearing the burden and therefore unlawfully being taxed." (*Occidental Life*, at p. 847.) The Court of Appeal rejected this argument because sales tax is imposed on the seller, not the buyer, regardless of which of the two bears its economic burden. The court stated, "it is unnecessary to . . . engage in lengthy examination of the semantics as to who is bearing the burden of the tax and why" (*ibid.*) because the Supreme Court in *Western Lithograph Co. v. State Bd. of Equalization* (1938) 11 Cal.2d 156 "holds as a matter of law that the legal incidence of the retail sales tax is on the retailer and not the consumer." (*Occidental Life*, at pp. 847–848.)

*Occidental Life* is legally indistinguishable from First American's case. Substitute an equipment lease for an ordinary sale, and the identical legal issue is presented—that is, whether the California Constitution forbids

documents but does not oppose judicial notice of ruling No. 70 and the rulemaking file.

The unopposed request for judicial notice of exhibits D (ruling No. 70) and E (rulemaking file) is granted, as is the request for judicial notice of exhibit A (Stats. 1965). (Evid. Code, § 451, subd. (a).) The request for judicial notice is denied with respect to exhibits B and C. Memoranda from an individual legislator to the governor are not properly subject to judicial notice. (*Quintano v. Mercury Casualty Co.* (1995) 11 Cal.4th 1049, 1062.)

imposing sales tax on "sales" of personal property to insurance companies. *Occidental Life* holds that the legal incidence of sales tax imposed under Regulation 1660(c)(1) is on the seller (or here, the lessor). Under *Occidental Life,* that the lessor passed the economic burden of sales tax to First American does not make First American the taxpayer.[11]

*Beneficial Standard Life Ins. Co. v. State Board of Equalization* (1962) 199 Cal.App.2d 18 (*Beneficial Standard*) is also instructive.[12] There, an insurance company sold company cars and office furniture to persons connected with the company. (*Beneficial Standard,* at p. 19.) The insurer paid no sales tax and did not collect use tax from the buyers. (*Ibid.*) The issue on appeal was whether Article XIII, section 28(f) precluded the state from collecting the amount of the buyers' *use tax* from the insurer for its default as collection agent for the state. (*Beneficial Standard*, at p. 20.) The Court of Appeal held that "Beneficial's constitutional exemption would not shield it from collecting the use tax" because that tax is imposed on the buyers not the seller. (*Ibid.*) Elaborating, the court explained:

> "[A]n exemption from taxation will not prevent the imposition of a tax on a third party not exempt from taxation, and the exempt taxpayer may be required to assess and collect such a tax." (*Beneficial Standard, supra,* 199 Cal.App.2d at p. 21.)

---

[11] Although *Occidental Life* is perhaps the centerpiece of the Department's brief, First American relegates its discussion of the case to a long footnote. We have previously noted that "[f]ootnotes are not the appropriate vehicle for stating contentions on appeal" (*Holden v. City of San Diego* (2019) 43 Cal.App.5th 404, 419–420 [collecting cases]), to which we might add that they are also not the appropriate vehicle to address the opposing party's central legal argument. In any event, we are not persuaded by First American's attempt to distinguish *Occidental Life*.

[12] Although neither party cited *Beneficial Standard*, before oral argument we notified counsel to be prepared to discuss it.

In seeking to uphold the judgment and writ of mandate, First American contends the economic reality is the same regardless of whether the tax is called a sales or a use tax. If a sales tax, the Lessor includes the tax as part of the rent. If a use tax, the Lessor, acting as collection agent for the state, includes the tax in the rent and pays the tax. Thus, First American concludes that what Regulation 1660(c)(1) calls a "sales tax" is really a "use tax" on First American, which Article XIII, section 28(f) prohibits.

We acknowledge that the distinction between legal and economic incidence of sales and use tax could be characterized as artificial. But as *Occidental Life* explains, an unbroken line of California authority, including from our Supreme Court, recognizes that distinction as legally significant. Courts have rejected constitutional claims indistinguishable from the one First American advances. (See *Occidental Life, supra*, 135 Cal.App.3d at pp. 847–848.) We discern no compelling reason to hold otherwise here.

In a related argument, First American points out that in *Mutual Life Ins. Co. v. City of Los Angeles* (1990) 50 Cal.3d 402, 409, the court stated that Article XIII, section 28(f) is intended to provide " 'the broadest possible exemption for insurance companies subject to the gross premiums tax.' " It argues that reclassifying the use tax as a sales tax "is a difference in form, and not of economic substance, and still leaves the insurance company paying the same amounts in rentals and tax as any other lessee." First American relies on *Diamond Nat'l Corp. v. State Bd. of Equalization* (1976) 425 U.S. 268 (*Diamond National*), where the U.S. Supreme Court held that for purposes of federal law, the legal incidence of California sales tax is on *the buyer* who pays sales tax reimbursement. It also cites *United States v. California Bd. of Equalization* (9th Cir. 1981) 650 F.2d 1127, 1131, which states that in determining the legal incidence of a tax on the United States

15

the court looks " 'beyond the bare face of the taxing statute' " and considers " 'all relevant circumstances.' " First American argues, "The identical reasoning does, and should, apply here."

However, California cases decided after *Diamond National* have limited that case to imposition of taxes on the federal government. (*Xerox Corp., supra,* 66 Cal.App.3d at p. 757; *Occidental Life*, *supra*, 135 Cal.App.3d at pp. 847–851.) "[T]he fact that the United States Supreme Court did not consider itself bound by the long line of California decisions in determining the incidence of the tax in a case involving a federal claim of immunity, does not affect the state court's interpretation insofar as it defines the legal incidence of the tax independently of a claim of federal immunity." (*Xerox Corp.*, at p. 757.)

Alternatively, First American contends that even if Regulation 1660(c)(1) is constitutional, it is void because it conflicts with Revenue and Taxation Code section 6203, subdivision (b), which provides:

> "As respects leases constituting sales of tangible personal property, the tax shall be collected from the lessee at the time amounts are paid by the lessee under the lease."

According to First American, section 6203, subdivision (b) prohibits the state from "switch[ing] the tax on leases of tangible personal property *from* use tax (as required by section [6203, subdivision] (b)) *to* sales tax . . . ." It argues that "the clear legislative declaration of section [6203, subdivision] (b)" prohibits switching "between sales tax and use tax at will."

But this argument is precluded, or at least mortally wounded, by two Supreme Court decisions that construe the statute differently. In *Culligan Water*, *supra*, 17 Cal.3d 86, the court approvingly cited a declaration submitted by the State Board of Equalization stating, " 'By reason of the interworking of Sections 6009, 6201, 6203, 6390, and 6401, the basic tax

16

on leases is considered to be a use tax on the lessee, which the lessor must collect. *If the lessee is exempt, then the tax is considered imposed on the lessor as a sales tax and Sections 6051 and 6012 become applicable.'*" (*Culligan,* at p. 91, italics added.) Similarly, in *IBM*, the court explained, "[B]ecause some business institutions in California, most notably banks and insurance companies enjoyed exemption from paying any use tax, the new [1965] law provided that in such cases the lessor would be liable for a sales tax based on payments received from the lessee." (*IBM, supra*, 26 Cal.3d at p. 927, fn. omitted.)[13]

Moreover, even apart from this authority, we would reject First American's argument because it misinterprets section 6203, subdivision (b). That statute is in a part of the Sales and Use Tax law (specifically, part I, ch. 3) dealing only with *use tax*. In other words, section 6203, subdivision (b) operates only where use tax is imposed under section 6201. When read in the context of the chapter and division of which it is part, section 6203, subdivision (b) does not impose a use tax; rather, it merely states that when use tax is imposed (as specified under other statutes), the lessor shall collect it from the lessee's rent payment.

B. *It is Unnecessary to Determine if First American Exhausted Administrative Remedies on the Unpled Additional Pending Claims.*

First American's writ petition sought two forms of relief. First, it asked the court to order the Department to pay $721,205.53, representing the amount allowed after the administrative appeal. Second, it asked for what it characterized as "supplemental and ancillary relief"—an order compelling the Department to "vacate and set aside" Regulation 1660(c)(1). First American's

---

[13]   Although the Department's opening brief cites *IBM* for this proposition as well as *Culligan Water*, First American's brief does not cite either case.

trial brief identified the "issues presented" in a similar fashion.  So did the Department's trial brief, which stated, "the only issue presented in the Petition, which is remaining for the [c]ourt to decide is whether Regulation 1660 is valid."

But along with its trial brief, First American also filed a declaration from its accountant, Karri Rozario.  Among other things, Rozario stated that First American had "parallel refund claims for subsequent years" that "were filed" with the Board of Equalization and "still being held by" the Department "without any action being taken on them, one way or another."  Then, for the first time in its *reply* trial brief, First American asserted, "One of the remedies sought by the Petition is to compel the agency to act on the pending refund applications in a manner consistent with applicable law."  The Department responded in its own reply, asserting the court lacked jurisdiction to decide these pending claims because they were outside the scope of the pleadings and the court lacked jurisdiction to rule on unexhausted tax refund claims not before it.

In a statement of decision written by First American's counsel , the trial court determined that First American "has exhausted its administrative remedies" for the other pending claims, or alternatively, was excused from having to do so.  In addition to ordering the Department to vacate Regulation 1660(c)(1), the trial court also ordered it to refund "all sums paid as either sales or use tax . . . for any refund application now pending before [the Department] . . . ."

On appeal, the Department contends the trial court lacked jurisdiction to order refunds for these other pending claims.  Given our conclusion that the court erred as a matter of law in determining Regulation 1660(c)(1) violates Article XIII, section 28(f), the portion of the judgment directing the

18

Department to issue refunds on the other pending claims must also necessarily be reversed, even assuming without deciding that the court had jurisdiction to consider those claims.

DISPOSITION

The judgment is reversed.  The writ of mandate issued by the superior court is vacated.  The trial court is directed to enter a new judgment determining that First American's monetary claim is moot based on the parties' settlement of that claim and stipulated order; and denying the petition for writ of mandate in all other respects.  Appellant California Department of Tax and Fee Administration is entitled to costs on appeal.

DATO, J.

WE CONCUR:

AARON, Acting P. J.

GUERRERO, J.

19